IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DAVID JAMES ALEXANDER, ) | CIVIL ACTION NO. 9:14-2194-MGL-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on May 11, 2011 (protective filing date), alleging disability beginning August 13, 2008 due to history of a gun shot wound and disc problems in his neck. (R.pp. 193-202, 219). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a

___



[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

hearing before an Administrative Law Judge (ALJ), which was held on December 18, 2012. (R.pp. 35-65). The ALJ thereafter denied Plaintiff's claims in a decision issued January 17, 2013. (R.pp. 19-28). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 8-10).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the



Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty-two (52) years old when he alleges he became disabled, has at least a high school education and past relevant work experience as a painter. (R.pp. 26, 193, 199, 219-220). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of status post gun shot wound to the right shoulder, status post arthroscopic debridement of minuscule tear of the right knee, and degenerative disc disease of the cervical spine, thereby rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of medium work,[3] and was therefore not entitled to disability benefits. (R.pp. 21-22, 26). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess and

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



consider the opinion of Plaintiff's treating physician, Dr. John Downey, by failing to properly evaluate his RFC, and by failing to properly consider and evaluate the subjective evidence with respect to the extent of Plaintiff's pain and limitations.

After careful review and consideration of the record and decision in this case, the undersigned is constrained to agree with the Plaintiff that the ALJ did commit reversible error in his evaluation of the evidence and opinions from Dr. Downey. Therefore, a reversal with remand of this case for proper consideration and evaluation of this evidence is required.

**I.**

The record reflects that Plaintiff received a gunshot wound in 1985 which resulted in damage to his right shoulder. (R.pp. 44, 245). He also complains of neck pain that began bothering him around 2002. (R.p. 371). Plaintiff was primarily treated for these complaints at the Royal Pain Center (where Dr. Downey practices), as well as by Dr. Ray Vaughters. Plaintiff also had a consultative examination performed by Dr. Susan Tankersley on July 7, 2011.

With respect specifically to Dr. Downey, the record reflects that Plaintiff was seen by Dr. Downey on January 31, 2006 for complaints of right shoulder pain. It was noted that Plaintiff was on several medications for pain, and he was assessed with radicular and diffuse joint point and a rotator cuff strain. He was also diagnosed with cervical radiculitis and shoulder crepitus, was placed on "symptom management", and advised to "exercise to tolerance". (R.pp. 447-448). On April 25, 2006, Dr. Downey also assessed Plaintiff with chronic cervical pain. (R.p. 449). Plaintiff continued to be seen by Dr. Downey at regular intervals, where he was consistently diagnosed with persistent pain, including chronic neck pain and even neuropathic pain. These records further reflect that Plaintiff was also seen when at the Royal Pain Center by Dr. John Rumbaugh, and physician's



assistant Lauren Eubanks. <u>See</u> <u>generally</u>, (R.pp. 452-468).

In October 2008, it was noted that Plaintiff's right neck and shoulder pain was the same, with "no changes". (R.p. 303). Plaintiff's condition was also unchanged in January 2009. (R.p. 302). In April 2009, it was noted that Plaintiff's pain persisted and was "constant", and that overall he had good days and bad days. Vicodin helped him with his pain. (R.p. 301). In June 2009, it was noted that Plaintiff had tried a "Flector Patch", but that it had not helped. Plaintiff was noted to be doing "odd jobs", and that Vicodin was helping his pain a great deal. His chronic neck pain was described as "stable". (R.p. 300).

In September 2009 Plaintiff noted that Voltaren gel was helping with his pain, which he described as "throbbing" at a level of 7 on a 10 point scale. (R.p. 299). In December 2009, Plaintiff stated that overall he was the same, with pain at a level of 6 on a 10 point scale. Vicodin was still helping with this pain. (R.p. 297). In February 2010, Plaintiff reported pain at a level of 7 on a 10 point scale, and complained that he did not sleep well because pain would wake him up at night. He was continued on Vicodin. (R.p. 296). In March 2010, Plaintiff described his pain as "constant" and "throbbing" at a level of 8 on a 10 point scale without meds, and 6 even with meds. Plaintiff stated that overall he was "worse", and that he was unable to sleep well. His right shoulder had full range of motion, but weakness in flexion. Consideration was given for an injection, and he was continued on his Vicodin. (R.p. 295).

In July 2010 Plaintiff described his pain as "constant" and "throbbing", at a level of 7 on a 10 point scale even with medications. Overall he described his condition as being "worse", noting that he had been "working out of town" for the last seven to eight weeks and that his "pain [was] pretty bad . . . hurting too much". Plaintiff's right shoulder was described as grinding and



aching. (R.p. 294). Some examination results (apparently from October 28, 2010) found that Plaintiff's "shoulders shrug symmetrically with good turn and strength", but his cervical range of motion was described as being only "functional". Neurologically Plaintiff was found to have a bilateral hyporeflexia and weakness in the C-6 myotome, worse in the right arm. He was diagnosed with cervical radiculopathy. (R.pp. 292-293).

When Dr. Downey saw the Plaintiff on January 26, 2011 for followup and refill of prescriptions, he was complaining of numbness and throbbing pain at a level of 6 (with meds) on a 10 point scale. (R.p. 421). On examination Plaintiff had similar findings as he had had on October 28, 2010, with the additional finding of tender paraspinal and shoulder girdle muscular complexes. It was noted that Plaintiff's examination findings strongly suggested radiculopathy, indicating nerve irritation in the region of the spinal canal. Plaintiff was advised to continue with his current regimen, activity to tolerance, and continue work. (R.p. 424-425). Another examination on March 23, 2011 found normal muscle tone and strength with tenderness to palpation over the right SI joint and right lumbar paraspinal. Plaintiff also again had tender paraspinal and shoulder girdle muscular complexes on the right, indicating nerve irritation in the region of the spinal canal. Plaintiff was instructed to continue with Percocet as prescribed and activity to tolerance, and that he should consider an injection and an anti-spasmodic. (R.pp. 419-420).

On June 8, 2011 Plaintiff was noted to have tender paraspinal and shoulder girdle muscular complexes on the right, hyper-reflexa and weakness following the right C-6 myatome/nerve distribution, otherwise physiological strength and reflexes. Dr. Downey continued Plaintiff's medications, with the notation on this visit being that Plaintiff's pain was "constant" at a level of 9 on a 10 point scale (without meds) and 5 on a 10 point scale (with meds). (R.pp. 411,



414). On August 31, 2011 Plaintiff told Dr. Downey that his "constant" and "throbbing" pain was at a level of 6 on a 10 point scale (with meds), and that his right shoulder was really irritating him after he had tried to clean his house to stay busy. Dr. Downey continued to diagnose Plaintiff with cervical radiculitis. (R.pp. 409-410). On November 23, 2011 Plaintiff complained that his persistent pain may have increased since his last visit and that he needed a Percocet refill. Dr. Downey assessed Plaintiff with, inter alia, chronic right shoulder pain and noted that he had "reviewed disability paperwork". (R.pp. 407-408).

On December 23, 2011 Dr. Downey completed a clinical assessment of pain for the Plaintiff in which he opined that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that movement of his extremities would likely greatly increase his pain to such a degree as to cause distraction from the task or even total abandonment of the task, that significant side effects from his medications could be expected to limit the effectiveness of work duties or the performance of such everyday tasks as driving an automobile, etc., that long term little improvement was likely and that Plaintiff's pain was likely to increase over time, and that Plaintiff's treatment regimen had no appreciable impact or only briefly altered the level of pain that Plaintiff experiences. (R.pp. 426-427). On that same day Dr. Downey also completed a Physical Capacities Evaluation Form in which he opined that Plaintiff only had the RFC for light work[4] with the additional restrictions of only a limited ability to push and/or pull, that he could never reach above the shoulder, and with no capacity for repetitive use of his hands. Dr.

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

7



Downey further stated that objective evidence supported his opinion, including an MRI of Plaintiff's cervical spine showing that he had degenerative joint disease, degenerative disc disease, a protrusion at C5-5, and foraminal stenosis. (R.p. 471-472).

**II.**

The Defendant does not dispute in her brief that Dr. Downey is a treating physician. Defendant's Brief, p. 16. A treating physician's opinion is ordinarily entitled to great weight; Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996)[Noting importance of treating physician opinion]; is entitled to deference, and must be weighed using all of the factors provided for in 20 C.F.R. § § 404.1527 and 416.927. See SSR 96-2p. Under these regulations, a treating source's opinion on the nature and severity of an impairment is entitled to "controlling weight" where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Further, the ALJ is required to provide an explanation in the decision for what weight is given a treating source's opinion and, if rejected, why it was rejected. See 20 C.F.R. § § 404.1527(c)(2) and 416.927(c)(2). This requirement is critically important here because (in light of Plaintiff's age), if Plaintiff only has the RFC for light work (as opined to by Dr. Downey), instead of the medium work RFC found by the ALJ, Plaintiff would be entitled to disability benefits under the Medical-Vocational Guidelines (i.e., the "Grids").[5] 20 C.F.R. pt. 404, subpt. P, app. 2, § § 202.06 and 203.06.

---

[5]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



In this case, the ALJ committed reversible error in his consideration of Dr. Downey's opinion for the simple reason that he did not think the December 2011 Pain Assessment and Physical Capacities Evaluation were Dr. Downey's opinions. Rather, the ALJ believed these two medical source statements were completed by Dr. Downey's physician's assistant, Ms. Eubanks, and were her opinions, not the opinions of Dr. Downey. See (R.pp. 24-25). The ALJ then gave these opinions "little weight", since he believed they were only the opinions of the physician's assistant. (R.p. 25). See Craig, 76 F.3d at 589-590 [Noting that opinions of those other than trained medical doctors are not afforded same weight as opinions of physicians]; Patton v. Astrue, No. 10-135, 2012 WL 645880 at * 7 (M.D.Ga. Feb. 6, 2012)[ALJ is not required to give significant weight to "other source" opinions.]; Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)[Physician assistants are defined as other sources].

However, the Pain Assessment and the Physical Capacities Evaluation both clearly bear the signature of Dr. Downey, in addition to that of Ms. Eubanks. See (R.pp. 427, 472). Defendant does not even dispute in her brief that the ALJ erred by finding that these opinions were from Ms. Eubanks. Defendant's Brief, p. 16. Therefore, since this evidence was actually from Plaintiff's treating physician, the ALJ was required to accord it "great weight", possibly even "controlling weight", unless after review of this opinion in accordance with the proper standard for evaluating treating physician opinions, the ALJ determined it was entitled to less weight, in which case he was required to specifically set forth the reasons for this finding. Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician]; cf. Cross v. Commissioner, No. 14-47, 2015 WL 1519888 at * 8 (D.S.C. Mar. 27, 2015). Therefore, by failing to treat these medical source



statements as being opinions of Plaintiff's treating physician, which they were, and then evaluating them under the proper standard, the ALJ committed clear error. Craig, 76 F.3d 5at 89-590 [Noting importance of treating physician opinion]; see Bailey v. Barnhart, No. 01-3474, 2002 WL 1401225 at **4 (7th Cir. July 26, 2002) [case remanded where ALJ did not adequately explain her rationale for discounting the recommendations of one of plaintiff's treating physicians].

The Defendant argues that notwithstanding the ALJ's error in believing that these assessments were from Ms. Eubanks, and not Dr. Downey, no reversible error was committed because the ALJ also determined that these opinions were not supported by clinical evidence. (R.p. 25). However, that argument is only a post hoc rationalization for upholding the decision, since that is not actually what the ALJ did. See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990)["Implicit" rejection of treating physician's opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons" for rejecting a treating physician's opinion]; see also Ellis v. Astrue, No. 07-3996, 2009 WL 578539 at * 8 (D.S.C. Mar. 5, 2009)[Rejecting post hoc rationale for ALJ's decision]; Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider post hoc rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]. Rather, it is clear in the decision that in finding that these opinions were not supported by clinical evidence and assigning them little weight, the ALJ considered these opinions pursuant to the standards for evaluating an opinion from a non-medical source. (R.p. 25); see SSR 06-03p [In evaluating an opinion from a non-medical source, the ALJ must consider whether the source has provided support for the opinion and whether the opinion is consistent with other evidence]. While on remand the ALJ may still choose to reject these opinions, even if evaluated under the standard applicable to treating physicians, that is not a decision that can



be made by this Court in the first instance on appellate review. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; see also Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the adjudicator may have thinking."]. Rather, it is necessary that the ALJ's decision itself "contain specific reasons for the weight given to the treating source's medical opinion . . . and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-02p, 1996 WL 374188, at * 5 (1996).

Therefore, the ALJ's failure to correctly identify these opinions as being from Plaintiff's treating physician, Dr. Downey, and to then set forth his reasons for rejecting Dr. Downey's opinion (assuming he would still do so in light of the fact that these opinions are from a treating physician, not a physician's assistant) requires reversal of the decision. See Bailey, 2002 WL 1401225 at **4 [case remanded where ALJ did not adequately explain her rationale for discounting the recommendations of one of plaintiff's treating physicians]; Morales, 225 F.3d at 317-318 [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician] cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide proper explanation or reason for rejecting or not addressing relevant probative evidence].

With respect to the remainder of Plaintiff's complaints concerning the decision, on remand the ALJ will be able to reconsider and re-evaluate Plaintiff's credibility and the medical



evidence as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002) [on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of a proper evaluation, discussion and findings with respect to the medical records and opinion of Dr. Downey, and for such further administrative action as is deemed necessary and appropriate. See Shalala v. Schaefer, 113 S.Ct. 2625 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 27, 2015
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

